MEYER & RAAPKE, APPELLEES, V. JOSEPH D. STONE, APPELLANT.

1. Evidence examined, and *Held*, To bring the case within the rule stated in *Smith v. Sands*, 17 Neb., 498.

2. Witnesses: EXAMINATION. When a witness, in answer to an inquiry as to a former statement, answers that he does not remember having made such statement, it is not equivalent to a denial that he made the same, neither is an answer to such inquiry, "not in that language," or like words, equivalent to a denial.

APPEAL from the district court of Saline county.

*Hastings & McGintie*, for appellant.

*Ryan Bros.*, for appellees.

MAXWELL, CH. J.

In December, 1883, the appellees filed in the district court of Saline county a petition against Joseph D. Stone,

appellant, alleging that plaintiffs were a co-partnership, and creditors of one Francis M. Woodruff, and exhibit their petition for their own benefit, as well as such other creditors of said Woodruff as shall come in under their bill and contribute to the expenses of the suit. Appellees also allege that September 6th, 1882, Woodruff was, and still is, indebted to appellees for goods, wares, and merchandise in the sum of $435.80, and interest due on a certain judgment rendered by the county court of Saline county, and that.the indebtedness existed long before July 6th, 1882, and that on the 25th day of September, 1882, execution was issued on the judgment and placed in a constable's hands for service, who afterwards returned the execution wholly unsatisfied, and that a transcript was filed in the district court of Saline county, May 11th, 1883; that long before July 6th, 1882, Woodruff was insolvent, and was threatened by his creditors, and made known these facts to Joseph D. Stone, appellant, and arranged with Stone that in case Woodruff's creditors attempted to compel payment of their claims, Woodruff should transfer his stock of goods, merchandise, etc., to Stone, to avoid payment of his debts, and to delay, hinder, and defraud his creditors; that Stone, as an inducement, promised Woodruff that he would take and hold and sell the goods, collect the accounts, and apply the proceeds to the payment of a small amount due to him (Stone), and account to Woodruff for the balance, and pay the same to Woodruff, or his creditors with whom settlement could be made for a small percentage of their claims; that he would hold the property, subject to Woodruff's directions, for above purposes; that on the 6th day of July, 1882, one of Woodruff's creditors threatened Woodruff with legal proceedings to compel payment of the debt due from him, and that thereupon, in pursuance of their previous bargain, Woodruff made a pretended sale of his goods, wares, and merchandise, fixtures, book accounts, etc., to Stone, for the sole purpose of hindering, delaying,

and defrauding Woodruff's creditors; that on the 6th day
of July, 1882, Woodruff was insolvent, which fact was
known to Stone; that Woodruff had no property aside from
the goods and property so transferred to Stone, which
were of the value of at least $4,500; that the debts of Wood-
ruff were equal to the same amount, and that Stone knew
of that fact.    Notwithstanding, Stone claims to have bought
the entire stock, etc., for $2,250, of which $340 he claims
was due to him and $250 were claims of creditors of Wood-
ruff held by Stone for collection, and these two amounts
were treated as payment *pro tanto* on said purchase price,
viz., $2,250; that there then remained $1,660 of the pur-
chase price, for which appellant claims he gave four notes
to Woodruff in four equal payments at six, twelve, eigh-
teen, and twenty-four months without interest; and appel-
lees deny that Stone held claims in his own favor, or in
favor of any one else against Woodruff, and alleges that
the transfer was made on account of the inability of Wood-
ruff to pay his debts, and to defraud his creditors and secure a
preference in favor of appellant and for the creditors whose
claims appellant held for collection; that neither appellant's
claim or either of those he held for collection were for
laborer's wages, and the purchase from Woodruff was not
in good faith, and was made by both parties to enable
Woodruff to avoid payment of his debts.

The petition also charges that Stone refuses to account
for the goods and accounts to the creditors, but claims he
absolutely purchased the same and again sold them to one
Jacob Starkey, about July 27th, 1882, for a full and ade-
quate consideration, and that Starkey is selling and dispos-
ing of said property as his own, and that the sale by Stone
to Starkey was made prior to appellees' judgment; that
between July 6th and July 27th, 1882, Stone sold a large
amount of the goods and converted them to his own use,
and has been since July 6th, 1882, collecting the accounts,
and is acting in utter disregard of the rights of the creditors

of Woodruff, and in violation of the trust under which he secured the property from Woodruff, by reason of which appellees suffer irreparable injury; that on July 6th, 1882, and for a long time prior, Woodruff was indebted to R. L. McDonald & Co. in the sum of $124, and on the 17th day of August, 1882, R. L. McDonald & Co. obtained a judgment against Woodruff for $125.50 and costs, $3.25, and on September 18th, 1882, caused an execution to be issued thereon which was duly returned October 16th, 1882, unsatisfied; that on the 1st day of February, 1883, R. L. McDonald & Co. sold to appellees said judgment; that a transcript thereof was filed in the district court of Saline county, May 10th, 1883; no part of said judgment has ever been paid; that on July 6th, 1882, and prior, Woodruff was indebted to Silver Link Lodge No. 69, of the Independent Order of Odd Fellows, in the sum of $100, and that Stone, in getting in possession of the property and books of Woodruff, promised as a part consideration to pay said debt out of the funds which should be collected from said accounts; that he has collected of the accounts more than sufficient to pay the debt, but has never paid it or any part of it; that on the 9th day of April, 1883, said lodge procured a judgment against Woodruff for the debt and costs, taxed at $135, and on the same day procured to be issued an execution on the judgment; that May 5th, 1883, the execution was returned wholly unsatisfied; that on April 10th, 1883, said lodge sold said judgment to appellees, who filed a transcript of the same in the district court of Saline county on the 11th day of May, 1883; that there is due appellees on the judgments aforesaid the sum of $730, and seven per cent interest from December 1st, 1883, and pray that Stone may be held liable and treated as a trustee for the benefit of appellees, as creditors of Woodruff, in respect to the property received from Woodruff; that an accounting may be had of the value of the goods and accounts, whether realized on or not by Stone, and that

Stone be required to pay to appellees on their judgments the value of the same; that the sale from Woodruff to Stone be declared to have been made in bad faith, and that Stone took the same only as trustee for the creditors of Woodruff, exclusive of Stone, and that the sale be declared null and void.

Stone, in his answer, denies the indebtedness of Woodruff and the several judgments and executions against him; denies the insolvency of Woodruff, his inability to pay his debts, and of all knowledge that Woodruff was threatened with judicial process to compel him to pay his debts; denies that he ever entered into an agreement with Woodruff to take his goods, hold, and sell them, in trust for Woodruff or for any creditor of Woodruff, and denies that he ever agreed in any way to assist Woodruff in effecting settlement with his creditors; denies he ever agreed to hold any property subject to Woodruff's directions, and alleges that on the 6th day of July, 1882, appellant bought of Woodruff a certain stock of goods, wares, and merchandise in the village of Friend, Saline county, Nebraska; that said stock was not worth more than the sum of $2,250, and defendant bought the same in good faith, gave its full value, viz., $2,250; that appellant had no knowledge whatever of any intention to hinder, defraud, or delay his creditors on the part of Woodruff, nor did said Stone buy said property with any intention to hinder, delay, or defraud any of Woodruff's creditors.

The reply is a general denial.

On the trial of the cause a jury was waived and the cause tried to the court, which rendered judgment as follows:

"This cause coming on to be heard before the court, and the court being fully advised in the premises, and after careful consideration the court finds for the plaintiffs, Meyer & Raapke, and against the defendant, J. D. Stone. The court finds that the sale of the goods and accounts

46

from Francis M. Woodruff to the defendant Stone, was fraudulent and void as against the creditors of the said Francis M. Woodruff. The court finds that at the time of said sale the accounts were worth $500, and the stock of goods was worth about $2,732, and that after defendant obtained the goods of the said Woodruff, he sold off the stock of goods at retail for about 20 days, and in the meantime putting in some new stock, and that at the end of that time he sold the stock of goods to a third party for $2,500. The court further finds that the said J. D. Stone had collected of the accounts $225, and that he has converted the property obtained of Woodruff to his own use, and that when he had some he held it in trust for the benefit of the creditors of said Woodruff; that he paid for the property to said Woodruff $2,000; all of which, except $70 evidenced by the last note, has been paid to the creditors of Woodruff, and that said Stone is entitled to a credit of $1,930 on his liability to the creditors of Woodruff; that there is due the plaintiffs, Meyer & Raapke, from Woodruff, of indebtedness contracted before the transfer of Woodruff to Stone, the sum of $882.14, in which sum said defendant Stone is liable to said plaintiffs, Meyer & Raapke. It is therefore considered, ordered, and adjudged that the plaintiff have and recover of and from the said defendant, J. D. Stone, the sum of $882.14, with interest from this date, and in default of payment of the same for 30 days, an execution issue therefor, and that plaintiff recover his costs herein expended, taxed at $———."

A reversal is sought, principally upon the grounds that the judgment is not sustained by the evidence. There is a large amount of testimony in the abstract tending to support the petition and also the answer. It would subserve no good purpose to set this testimony out at length. The conceded facts are that the goods and book accounts were worth considerably more than the amount paid for them by the appellant, the proof varying from $2,300 to $5,000

A considerable portion of the testimony against the appellant consists of admissions, said to have been made by him to various agents of other creditors. The appellant, when asked in regard to some of these admissions, answered as follows:

Q. At that time and place did you say to Van Slyck that he (Woodruff) came to your office one day and stated that they had drawn up a mortgage and wanted him to sign it, and that he either would have to sign it or they would get out an attachment right away; and I says to him, stay here a few minutes?

A. I have no recollection of any such transaction.

Q. At the same time and place did you further say in the same connection to Van Slyck: "And I went out the back door, the back way to Woodruff's store, and went down cellar and looked around and looked through the store, and asked the clerk how many dollars' worth of goods he thought there was in there, and he says $2,500, and I concluded there was fully that much, and I told him I would give him my note for $2,000, deducting out what he was owing me, payable in 6, 12, 18, and 24 months without interest?

A. I think I did not make any such a statement.

Q. At the same time did you say it happened Morton came along, and I called him in, drew up a bill of sale, and took possession of the goods and store?

A. No, sir.

Q. In the same conversation did you say to Van Slyck: I afterwards asked him if he had any debts of honor, and he said yes, that he owed the Odd Fellows about $100, and other small accounts amounting to $200; and I told him if he would turn over his notes and book accounts, I would collect them and pay these and turn the balance over to him or his creditors. And did you say I calculated it would take about $250 for this, for I would want about $50 for my trouble?

A.    I have no recollection of any such transaction.

Q.    At the same time did Van Slyck say to you how many notes and accounts were there, and you said between $1,100 and $1,200.

A.    Not in that language.

Q.    At the same time did Van Slyck ask you if you would turn a part out of them to Farrington & Co., and you said go and see Woodruff and see what he says about it. Whereupon Van Slyck went out, and after his return said Woodruff was willing and would be glad to have you do so; and did you say I don't propose to turn these accounts to anybody, but propose to collect these accounts and buy up his accounts on a shave and put the boy on his feet again?

A.    I did not use any such language.

Q.    In that conversation did you say to Van Slyck: "Do you know of anybody that wants to buy a stock of goods, etc., worth about $3,500 for the whole thing just as as it stands, and I think there is as many goods there as when I bought it, for I have bought a few groceries. There is a bargain in it at that money?"

A.    I think I did not say so.

Q.    At that time did you say to Van Slyck: "Do you know of anybody that wants to buy a stock of goods, worth about $3,500 for the whole thing just as it stands, and I think there is nearly as many goods there as when I bought it, for I have bought a few groceries. There is a bargain in it at that money?"

A.    Not in that language.

The statement of a witness, that he does not remember that he made certain statements to which his attention is called, is not equivalent to a denial of such statements, nor do equivocal allegations of "not in that language," and the like, have that effect. There is sufficient evidence to bring the case within the rule stated in *Smith v. Sands*, 17

Neb., 498, and to support the judgment rendered by the court below.

The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.